LAW OFFICE OF WILLIAM E. KENNEDY
WILLIAM E. KENNEDY (CSB #152214)
2797 Park Avenue, Suite 201
Santa Clara, California 95050
(408) 241-1000 phone
(408) 241-1500 fax
willkennedy@pacbell.net

Attorney for Plaintiffs WILLIAM G. STEWART AND NANCY STEWART

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM G. STEWART AND NANCY STEWART,<br><br>    Plaintiffs<br><br>vs.<br><br>BAC HOME LOANS SERVICING, LP<br><br>    Defendant. | Case No.: CV10-01225 SI<br><br>**COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT**<br><br>**JURY TRIAL DEMAND** |

## JURISDICTION AND VENUE

1. Jurisdiction is proper in the Federal District Court pursuant to 28 U.S.C. §1331, on the basis that defendant BAC HOME LOANS SERVICING, LP, by an act or omission violated federal law, specifically the federal Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*

2. Venue is proper in the Federal District Court of Northern California pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

3. At all material times, Plaintiffs WILLIAM G. STEWART AND NANCY STEWART were individuals residing in Marin County, California.

4. Plaintiffs are informed and believe that at all material times, defendant BAC HOME LOANS SERVICING, LP (hereinafter "Bank of America") is a Texas Limited Partnership.

COMPLAINT AND JURY TRIAL DEMAND                                                                                      1

## FACTUAL BACKGROUND

5. In early 2007, plaintiffs took out a home equity line of credit from SBMC Mortgage and drew approximately $84,000 from the credit line.

6. The terms of the home equity line of credit allowed plaintiffs to make interest only payments.

7. In May 2007, the line of credit was assigned to Countrywide Savings. For unknown reasons Countrywide Savings sent monthly statements to plaintiffs which requested payment of principal and interest, rather than just interest. Although plaintiffs were only obligated to pay interest, they paid principal and interest for several months. However, after discovering this billing error in approximately November 2008, plaintiffs notified Countrywide that they would only make interest payments. Beginning in December 2008, plaintiffs made interest-only payments. Countrywide, which apparently continued to expect to receive principal and interest payments considered plaintiffs' loan to be delinquent and in subsequent monthly statements, informed plaintiffs that they were past due.

8. Mr. Stewart contacted Countrywide and again informed its representatives that the line of credit required only interest payments. Ultimately, an audit was done on plaintiffs' account. Countrywide acknowledged their continuing mistake and apologized to Mr. Stewart. Mr. Stewart was told not to make payments until the audit was completed since the account was overpaid. Throughout this process, Mr. Stewart spent many hours and experienced numerous transfers from many different departments, supervisors, and divisions.

9. In approximately May 2009, plaintiffs' account was acquired by Bank of America from Countrywide.

10. In June 2009, Bank of America issued a notice of intent to accelerate the loan to plaintiffs.

11. Mr. Stewart again spent numerous hours on the telephone with Bank of America, explaining the situation to numerous employees who offered different explanations of why the problem was occurring. Mr. Stewart was told not to worry, and was assured that there were notes in the computer that the account was not marked delinquent. Mr. Stewart was also assured that

COMPLAINT AND JURY TRIAL DEMAND

he had not been given any negative blemishes on his credit.

12. In July 2009, Mr. Stewart received notification from Wells Fargo that due to derogatory information on his credit reports, it had frozen their equity line with them.

13. Bank of America also sent a letter to plaintiffs stating that it was freezing plaintiffs' line of credit.

14. Mr. Stewart then discovered that Bank of America had, in fact, reported delinquencies on his account. Specifically, Bank of America reported late payments on plaintiffs' line of credit in January, February, and June, 2009. These reports were made with respect to both Mr. and Mrs. Stewart.

15. On August 14, 2009, Mr. Stewart submitted a dispute letter to the three major credit reporting agencies – Trans Union, Experian, and Experian. On August 17, 2009, Mr. Stewart submitted the same dispute letter to Bank of America. The letter again explained that plaintiffs were being improperly billed for interest and principal payments, leading to the derogatory credit report.

16. Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), plaintiffs are informed and believe that each of the three credit reporting agencies conveyed Mr. Stewart's dispute to Bank of America.

17. Bank of America verified to each of the three credit reporting agencies that the derogatory information which it was reporting concerning Mr. Stewart was correct.

18. Thereafter, each of the three credit reporting agencies reported back to Mr. Stewart that the derogatory credit would not be removed from his credit report.

19. On October 28, 2009, plaintiffs again sent a comprehensive dispute letter to the credit reporting agencies.

20. The October 28, 2009 letter was also sent to Bank of America.

21. The letter explained the history of the dispute, and requested that the derogatory information be removed from plaintiffs' credit reports.

22. Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), plaintiffs are informed and believe that each of the three credit reporting

COMPLAINT AND JURY TRIAL DEMAND 3

agencies conveyed Mr. Stewart's dispute to Bank of America.

23. Bank of America verified to each of the three credit reporting agencies that the derogatory information which it was reporting concerning plaintiffs was correct.

24. Thereafter, each of the three credit reporting agencies reported back to both plaintiffs that the derogatory credit would not be removed from their respective credit reports.

25. In December 2009, plaintiffs again sent a comprehensive dispute letter to the credit reporting agencies and Bank of America. The letter explained the history of the dispute, and again requested that the derogatory information be removed from plaintiffs' credit reports.

26. Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), plaintiffs are informed and believe that each of the three credit reporting agencies conveyed Mr. Stewart's dispute to Bank of America.

27. Bank of America verified to each of the three credit reporting agencies that the derogatory information which it was reporting concerning plaintiffs was correct.

28. Thereafter, each of the three credit reporting agencies reported back to both plaintiffs that the derogatory credit would not be removed from their respective credit reports.

29. On December 14, 2009 Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns. We will provide a more complete response within twenty (20) business days."

30. On January 26, 2010, Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns. We will provide a more complete response within twenty (20) business days."

31. In late January 2010, plaintiffs sent a certified letter to Bank of America asking them if they had made a decision yet as to how their matter would be resolved. The letter was received by Bank of America on January 29, 2010.

32. On February 5, 2010, Bank of America sent a letter to plaintiffs which stated: "Our records reflect your payments were delinquent for those months. Consequently, we are

COMPLAINT AND JURY TRIAL DEMAND

4

unable to grant your request to remove the negative remarks on your credit file." Although the letter was dated in February 2010, the letter stated "Your next payment is due on September 25, 2009."

33. The February 5, 2010 letter also states that a loan history had been mailed to plaintiffs under separate cover.

34. A loan history was mailed to plaintiffs which showed numerous adjustments and reversals to plaintiffs' account.

35. On February 11, 2010, Bank of America sent a letter to Mr. Stewart requesting more time to reply.

36. On February 25, 2010, Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns. We will provide a more complete response within twenty (20) business days." No further response has been received by plaintiffs.

37. During this process, and after plaintiffs first disputed the information on their credit report with the credit reporting agencies, plaintiffs attempted to refinance several properties to take advantage of historically low interest rates which were available. Because of the credit blemishes, plaintiffs did not qualify for the low interest rates. Accordingly, plaintiffs suffered substantial money damages.

### FIRST CLAIM FOR RELIEF AGAINST BANK OF AMERICA
(Fair Credit Reporting Act)

38. Plaintiffs incorporate all other paragraphs as though fully set forth herein.

39. 15 U.S.C. §1681s-2b explains the responsibilities of furnishers of credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by the furnisher. Upon receiving notice of a dispute, the furnisher is to review all relevant information provided by the consumer reporting agency, conduct a reasonable investigation and report the results to the appropriate consumer reporting agencies. The consumer may bring a cause of action against the furnisher if it does not comply with the provisions of 15 U.S.C. §1681s-2b.

COMPLAINT AND JURY TRIAL DEMAND

5

40. Plaintiffs communicated their dispute regarding the derogatory credit information to the Equifax, Experian and Trans Union on multiple occasions. Thereafter, plaintiffs are informed and believe that each of these credit reporting agencies notified Bank of America of the dispute in accordance with 15 U.S.C. §1681i(a)(2) each time it received a dispute from plaintiffs.

41. Thereafter, plaintiffs are informed and believe that Bank of America failed to review all relevant information provided by the credit reporting agencies and/or conduct a reasonable investigation, in violation of 15 U.S.C. §1681s-2b.

42. In addition, plaintiffs are informed and believe that Bank of America notified the credit reporting agencies that the derogatory credit information reported with respect to the plaintiffs was correct.

43. Plaintiffs are informed and believe that the violation of 15 U.S.C. §1681s-2b by Bank of America was willful. In the alternative, plaintiffs are informed and believe that the violation of 15 U.S.C. §1681s-2b by Bank of America was negligent.

## SECOND CLAIM FOR RELIEF AGAINST BANK OF AMERICA
### (California Consumer Credit Reporting Agencies Act)

44. Plaintiffs incorporate all other paragraphs as though fully set forth herein.

45. Bank of America is a "debt collector" as that term is defined in Civil Code §1788.2(c).

46. Bank of America violated Civil Code §1785.25(a) by reporting credit information to consumer credit reporting agencies, as that term is defined at Civil Code §1785.3(d). which it knew or should have known was incomplete or inaccurate.

47. Plaintiffs are informed and believe that the violation of Civil Code §1785.25(a) by defendant was willful and in accordance with defendant's standard business procedures. In the alternative, plaintiffs are informed and believe that the violation of Civil Code §1785.25(a) by defendant was negligent.

48. Defendant's violations of the California Consumer Credit Reporting Agencies Act caused damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

THEREFORE, Plaintiffs pray that the Court grant:

a) Actual damages pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, and Civil Code §1685.31(a);

b) Punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and Civil Code §1785.31(a)(2)(B);

c) For an injunction requiring defendant to correct Plaintiffs' credit information pursuant to Civil Code §1785.31(b);

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n(c) and Civil Code §1785.31(a)(1) and §1785.31(d).

e) For such other and further relief as the Court deems just and proper.

Dated: March 24, 2010                LAW OFFICE OF WILLIAM E. KENNEDY

_/s/ William E. Kennedy_
William E. Kennedy
Attorney for Plaintiffs WILLIAM G. STEWART
AND NANCY STEWART

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury in this action.

Dated: March 24, 2010                LAW OFFICE OF WILLIAM E. KENNEDY

_/s/ William E. Kennedy_
William E. Kennedy
Attorney for Plaintiffs WILLIAM G. STEWART
AND NANCY STEWART