1  LAW OFFICE OF WILLIAM E. KENNEDY
   WILLIAM E. KENNEDY (CSB #158214)
2  2797 Park Avenue, Suite 201
   Santa Clara, California 95050
3  (408) 241-1000 phone
   (408) 241-1500 fax
4  willkennedy@pacbell.net

5  Attorney for Plaintiffs WILLIAM G. STEWART AND NANCY STEWART

6

7                **UNITED STATES DISTRICT COURT**

8                **NORTHERN DISTRICT OF CALIFORNIA**

9

10 WILLIAM G. STEWART AND NANCY          )  Case No.:  10-01225SI
   STEWART,                              )
11                                       )  **SECOND AMENDED COMPLAINT**
       Plaintiffs                        )  **FOR VIOLATIONS OF THE FAIR**
12                                       )  **CREDIT REPORTING ACT, THE**
   vs.                                   )  **CALIFORNIA CONSUMER CREDIT**
13                                       )  **REPORTING AGENCIES ACT, AND**
   BAC HOME LOANS SERVICING, LP; EQUIFAX )  **THE REAL ESTATE SETTLEMENT**
14 INFORMATION SERVICES, LLC; EXPERIAN   )  **PROCEDURES ACT**
   INFORMATION SOLUTIONS, INC.; and TRANS )
   UNION LLC                             )  **JURY TRIAL DEMAND**
15                                       )
       Defendants.                       )
16 _____ )

17              **JURISDICTION AND VENUE**

18        1.      Jurisdiction is proper in the Federal District Court pursuant to 28 U.S.C. §1331,

19 on the basis that defendants, by an act or omission violated federal law, specifically the federal

20 Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq.*

21        2.      Venue is proper in the Federal District Court of Northern California pursuant to

22 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events or

23 omissions giving rise to the claim occurred.

24                      **PARTIES**

25        3.      At all material times, Plaintiffs WILLIAM G. STEWART AND NANCY

26 STEWART were individuals residing in Marin County, California.

27        4.      Plaintiffs are informed and believe that at all material times, defendant BAC

28 HOME LOANS SERVICING, LP (hereinafter "Bank of America") is a Texas Limited

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

1   Partnership.

2       5.      Defendant Equifax Information Services LLC (hereinafter "Equifax") is a

3   "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

4       6.      Defendant Experian Information Solutions, Inc. (hereinafter "Experian") is a

5   "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

6       7.      Defendant Trans Union LLC (hereinafter "Trans-Union") is a "consumer

7   reporting agency" as defined by 15 U.S.C. §1681a(f).

8

9

10                          **FACTUAL BACKGROUND**

11      8.      In early 2007, plaintiffs took out a home equity line of credit from SBMC

12  Mortgage and drew approximately $84,000 from the credit line.

13      9.      The terms of the home equity line of credit allowed plaintiffs to make interest

14  only payments.

15      10.     In May 2007, the line of credit was assigned to Countrywide Savings.   For

16  unknown reasons Countrywide Savings sent monthly statements to plaintiffs which requested

17  payment of principal and interest, rather than just interest.  Although plaintiffs were only

18  obligated to pay interest, they paid principal and interest for several months.  However, after

19  discovering this billing error in approximately November 2008, plaintiffs notified Countrywide

20  that they would only make interest payments.  Beginning in December 2008, plaintiffs made

21  interest-only payments.  Countrywide, which apparently continued to expect to receive principal

22  and interest payments considered plaintiffs' loan to be delinquent and in subsequent monthly

23  statements, informed plaintiffs that they were past due.

24      11.     Mr. Stewart contacted Countrywide and again informed its representatives that

25  the line of credit required only interest payments.  Ultimately, an audit was done on plaintiffs'

26  account.  Countrywide acknowledged their continuing mistake and apologized to Mr. Stewart.

27  Mr. Stewart was told not to make payments until the audit was completed since the account was

28  overpaid.  Throughout this process, Mr. Stewart spent many hours and experienced numerous

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

transfers from many different departments, supervisors, and divisions.

12.     In approximately May 2009, Bank of America acquired Countrywide and all further actions concerning the account were taken by Bank of America.

13.     In June 2009, Bank of America issued a notice of intent to accelerate the loan to plaintiffs.

14.     Mr. Stewart again spent numerous hours on the telephone with Bank of America, explaining the situation to numerous employees who offered different explanations of why the problem was occurring. Mr. Stewart was told not to worry, and was assured that there were notes in the computer that the account was not marked delinquent.  Mr. Stewart was also assured that he had not been given any negative blemishes on his credit.

15.     In July 2009, Mr. Stewart received notification from Wells Fargo that due to derogatory information on his credit reports, it had frozen their equity line with them.

16.     Bank of America also sent a letter to plaintiffs stating that it was freezing plaintiffs' line of credit due to alleged late payments.

17.     Mr. Stewart then discovered that Bank of America had, in fact, reported delinquencies on his account.  Specifically, Bank of America reported late payments on plaintiffs' line of credit in January, February, and June, 2009.  These reports were made with respect to both Mr. and Mrs. Stewart.

18.     On August 14, 2009, Mr. Stewart submitted a dispute letter to the three major credit reporting agencies – Trans Union, Experian, and Experian.  On August 17, 2009, Mr. Stewart submitted the same dispute letter to Bank of America.  The letter again explained that plaintiffs were being improperly billed for interest and principal payments, leading to the derogatory credit report.

19.     Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), each of the three credit reporting agencies conveyed Mr. Stewart's dispute to Bank of America.

20.     Bank of America verified to each of the three credit reporting agencies that the derogatory information which it was reporting concerning Mr. Stewart was correct.

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

3

21.     Thereafter, each of the three credit reporting agencies reported back to Mr. Stewart that the derogatory credit would not be removed from his credit report.

22.     On November 12, 2009, plaintiffs again sent a comprehensive dispute letter to the credit reporting agencies.

23.     The November 12, 2009 letter was also sent to Bank of America.

24.     The letter explained the history of the dispute, and requested that the derogatory information be removed from plaintiffs' credit reports.

25.     Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), plaintiffs are informed and believe that each of the three credit reporting agencies conveyed Mr. Stewart's dispute to Bank of America.

26.     Bank of America verified to each of the three credit reporting agencies that the derogatory information which it was reporting concerning plaintiffs was correct.

27.     Thereafter, each of the three credit reporting agencies reported back to both plaintiffs that the derogatory credit would not be removed from their respective credit reports.

28.     On December 14, 2009 Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns.  We will provide a more complete response within twenty (20) business days."

29.     On December 21, 2009, plaintiffs again sent a comprehensive dispute letter to the credit reporting agencies and Bank of America. The letter explained the history of the dispute, and again requested that the derogatory information be removed from plaintiffs' credit reports.

30.     Thereafter, pursuant to the requirements of the Fair Credit Reporting Act, 15 U.S.C. §1681i(a)(2), plaintiffs are informed and believe that Trans Union and Equifax  conveyed plaintiffs' dispute to Bank of America.

31.     In response to plaintiffs' December 21, 2009 correspondence, Experian responded to William and Nancy Stewart as follows:

> We are responding to your request to verify item(s) on your personal credit report.  We have already investigated this information and the credit grantor has verified its accuracy. Please refer to the personal credit report you received for this name, phone number, and address of the credit grantor who verified this information.  Pursuant to Section

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

611(a)(3)(A) of the Fair Credit Reporting Act, we will not be investigating your dispute again at this time.

32.     Pursuant to 15 U.S.C. §1681i, Experian was required to conduct an investigation by forwarding plaintiffs' dispute to Bank of America.  The investigation could be terminated pursuant to section 611(a)(3)(A) of the Fair Credit Reporting Act (15 U.S.C. §1681i(a)(3)(A)) only if Experian reasonably determined that the dispute by the consumer was frivolous or irrelevant.

33.     Bank of America verified to Equifax and Trans Union that the derogatory information which it was reporting concerning plaintiffs was correct.

34.     Thereafter, Equifax and Trans Union reported back to both plaintiffs that the incorrect information had been verified, and that the derogatory credit would not be removed from their respective credit reports.

35.     On January 26, 2010, Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns.  We will provide a more complete response within twenty (20) business days."

36.     On January 29, 2010, plaintiffs sent a certified letter to Bank of America asking them if they had made a decision yet as to how their matter would be resolved, and resubmitting the December 21, 2009 dispute letter.

37.     On February 5, 2010, Bank of America sent a letter to plaintiffs which stated: "Our records reflect your payments were delinquent for those months.  Consequently, we are unable to grant your request to remove the negative remarks on your credit file."  Although the letter was dated in February 2010, the letter stated "Your next payment is due on September 25, 2009."

38.     The February 5, 2010 letter also states that a loan history had been mailed to plaintiffs under separate cover.

39.     A loan history was mailed to plaintiffs which showed numerous adjustments and reversals to plaintiffs' account.

40.     On February 11, 2010, Bank of America sent a letter to Mr. Stewart requesting

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

more time to reply.

41.     On February 25, 2010, Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining the documentation and information necessary to address your questions and concerns.  We will provide a more complete response within twenty (20) business days."

42.     On April 12, 2010, Bank of America sent a letter to plaintiffs informing them that "We are in the process of obtaining additional information to complete the research to address your concerns.  Please allow an additional twenty (20) business days for a response to be sent."

43.     During this process, and after plaintiffs first disputed the information on their credit report with the credit reporting agencies, plaintiffs attempted to refinance several properties to take advantage of historically low interest rates which were available.  Because of the credit blemishes, plaintiffs did not qualify for the low interest rates.  Accordingly, plaintiffs suffered substantial money damages.

## FIRST CLAIM FOR RELIEF AGAINST BANK OF AMERICA
### (Fair Credit Reporting Act – 15 U.S.C. §1681s-2b)

44.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

45.     15 U.S.C. §1681s-2b explains the responsibilities of furnishers of credit information after they have been notified by a credit reporting agency that the consumer disputes the credit information provided by the furnisher.  Upon receiving notice of a dispute, the furnisher is to review all relevant information provided by the consumer reporting agency, conduct a reasonable investigation and report the results to the appropriate consumer reporting agencies.  The consumer may bring a cause of action against the furnisher if it does not comply with the provisions of 15 U.S.C. §1681s-2b.

46.     Plaintiffs communicated their dispute regarding the derogatory credit information to the Equifax, Experian and Trans Union on multiple occasions.  Thereafter, plaintiffs are informed and believe that each of these credit reporting agencies notified Bank of America of the dispute in accordance with 15 U.S.C. §1681i(a)(2).

47.     Thereafter, plaintiffs are informed and believe that each of the 12+ times it was

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

notified of a dispute by a credit reporting agency, Bank of America failed to review all relevant information provided by the credit reporting agencies and/or conduct a reasonable investigation to ascertain whether the derogatory information it had reported was incomplete or inaccurate, in violation of 15 U.S.C. §1681s-2b.

48.    In addition, plaintiffs are informed and believe that Bank of America notified the credit reporting agencies that the derogatory credit information reported with respect to the plaintiffs was correct, and failed to notify the credit reporting agencies that the account was disputed.

49.    Plaintiffs are informed and believe that the violation of 15 U.S.C. §1681s-2b by Bank of America was willful.  In the alternative, plaintiffs are informed and believe that the violation of 15 U.S.C. §1681s-2b by Bank of America was negligent.

50.    Bank of America's violations of  15 U.S.C. §1681s-2b caused damages in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF AGAINST BANK OF AMERICA**
**(California Consumer Credit Reporting Agencies Act --Civil Code §1785.25(a))**

51.    Plaintiffs incorporate all other paragraphs as though fully set forth herein.

52.    Bank of America violated Civil Code §1785.25(a) by reporting credit information to consumer credit reporting agencies, as that term is defined at Civil Code §1785.3(d). which it knew or should have known was incomplete or inaccurate

53.    Plaintiffs are informed and believe that the violation of Civil Code §1785.25(a) by defendant was willful and in accordance with defendant's standard business procedures.  In the alternative, plaintiffs are informed and believe that the violation of Civil Code §1785.25(a) by defendant was negligent.

54.    Defendant's violations of the California Consumer Credit Reporting Agencies Act caused damages in an amount to be proven at trial.

**THIRD CLAIM FOR RELIEF AGAINST EQUIFAX, EXPERIAN, AND TRANS UNION**
**(Fair Credit Reporting Act – 15 U.S.C. §1681i(a)(2)(B))**

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

55.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

56.     Pursuant to the Fair Credit Reporting Act, at 15 U.S.C. §1681i(a)(2)(B), upon receiving a dispute from the Stewarts concerning the derogatory credit information the three credit reporting agencies were required to provide "all relevant information regarding the dispute that is received by the agency" to the furnisher of the disputed credit information - in this case Bank of America.

57.     Neither Equifax, Experian, nor Trans Union complied with 15 U.S.C. §1681i(a)(2)(B).  Rather, in response to receipt of a dispute letter from plaintiffs, the credit reporting agencies generated and conveyed an Automated Consumer Dispute Verification form ("ACDV") to Bank of America.  At least twelve ACDV forms were generated and conveyed to Bank of America by the credit reporting agencies.  In no case, did the credit reporting agencies convey the dispute letter received from plaintiffs to Bank of America.  The ACDV forms generated did not explain the nature of plaintiffs' dispute.  Instead, the forms merely represented the plaintiffs' disputes as a generic "Dispute Code."  Most of the ACDVs generated by the credit reporting agencies used the "106" Dispute Code, which translates to "disputes present/previous account status."

58.     On some of the ACDVs, the ACDVs included a section for text which purportedly explained the nature of the dispute.  The text provided, however, was nonsensical, or incomplete.  For example, in some ACDVs, the credit reporting agencies appeared to reproduce one out-of-context sentence from the Stewarts' dispute letters.

59.     Plaintiffs are informed and believe that each of the credit reporting agencies routinely violate 15 U.S.C. §1681i(a)(2)(B) by failing to provide "all relevant information regarding the dispute that is received by the agency" to the credit reporting agencies.  Plaintiffs are informed and believe that credit reporting agencies routinely use ACDVs to convey consumer disputes to furnishers of disputed credit information, when the ACDVs are inadequate to convey the nature and reasons for the consumers' dispute.

60.     Plaintiffs are informed and believe that the violations of 15 U.S.C. §1681i(a)(2)(B) by the credit reporting agencies was willful.  In the alternative, plaintiffs are

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

informed and believe that the violations of 15 U.S.C. §1681i(a)(2)(B) by the credit reporting agencies was negligent.

61.     The credit reporting agencies' violations of 15 U.S.C. §1681i(a)(2)(B) caused damages in an amount to be proven at trial.


## FOURTH CLAIM FOR RELIEF AGAINST EXPERIAN
### (Fair Credit Reporting Act – 15 U.S.C. §1681i)

62.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

63.     Pursuant to 15 U.S.C. §1681i, Experian was required to conduct an investigation in response to plaintiffs' December 14, 2009 dispute letter, and was required to forward plaintiffs' dispute to Bank of America.  Experian failed to conduct the required investigation, wrongfully citing section 611(a)(3)(A) of the Fair Credit Reporting Act (15 U.S.C. §1681i(a)(3)(A)) which only allows credit reporting agencies to terminate investigation of a consumer dispute if it reasonably determines that the dispute by the consumer is frivolous or irrelevant.  Plaintiffs' dispute was not frivolous or irrelevant, and Plaintiffs are informed and believe that Experian either made no such determination, or unreasonably made such a determination.

64.     Plaintiffs are informed and believe that the violation of 15 U.S.C. §1681i by Experian was willful.  In the alternative, plaintiffs are informed and believe that the violation of 15 U.S.C. §1681i by Experian was negligent.

65.     Experian's violation of 15 U.S.C. §1681i caused damages in an amount to be proven at trial.


## FIFTH CLAIM FOR RELIEF AGAINST BANK OF AMERICA
### (Real Estate Settlement Procedures Act – 15 U.S. C. §2605)

66.     Plaintiffs incorporate all other paragraphs as though fully set forth herein.

67.     Bank of America is a servicer of a federally related mortgage loan and therefore is subject to the Real Estate Settlement Procedures Act (" RESPA") pursuant to 12 U.S.C.§2605(e);

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

68.     RESPA imposes a duty on mortgage servicers such as Bank of America to respond to consumer complaints that a mortgage account is in error by either making the requested correction or explaining the reason they did not.  RESPA further requires that loan servicers cease reporting disputed credit information for 60 business days following a dispute.

69.     The August 17, 2009,  November 12, 2009, December 21, 2009, and January 29, 2010 letters to Bank of America described above each constituted "qualified written requests" pursuant to 12 U.S.C. §2605(e)(1)(B) insofar as all four letters included, or otherwise enabled Bank of America to identify the plaintiffs' name and account, and included a statement of the reasons for the plaintiffs' belief that the account was in error.

70.     Pursuant to 12 U.S.C. §2605(e)(1)(A) Bank of America was required to acknowledge receipt of the dispute letters within 20 days (excluding legal public holidays, Saturdays, and Sundays).

71.     Pursuant to 12 U.S.C. §2605e(2), within 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from plaintiffs of the each of the four dispute letters, Bank of America was required to:

1) make appropriate corrections in plaintiffs' account, including any late charges or penalties, and

2) transmit to plaintiffs a written notification of such correction, which included the name and telephone number of a representative of Bank of America who can provide assistance.

72.     Alternatively, if Bank of America determined to not make corrections to plaintiffs' account, it was required to:

1) conduct an investigation,

2) provide plaintiffs with a written explanation or clarification that included a statement of the reasons for which Bank of America believed the account was correct, and

3) provide the name and telephone number of an individual employed by, or the office or department of Bank of America who could provide assistance to the borrower.

73.     Pursuant to 12 U.S.C. §2605e(3), during the 60-day period beginning on the date of Bank of America's receipt of the four dispute letters, Bank of America was prohibited from

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

10

providing information regarding any disputed overdue payments to any consumer reporting agency.

74.   With respect to the August 17, 2009 letter, Bank of America violated each of the above-listed requirements.

75.   With respect to the November 12, 2009, December 21, 2009 and January 29, 2010 letters, plaintiffs did not receive any response until February 5, 2010.  The letter plaintiffs received stated that the account was not in error and would not be changed.  The letter purported to set forth the reasons why Bank of America rejected plaintiffs' dispute, but in fact was non-responsive to the nature of plaintiffs' dispute, i.e. that plaintiffs were considered to be delinquent only because Bank of America improperly demanded principal and interest payments, when only interest payments were due.  Further, the letter nonsensically stated that "Your next payment is due on September 25, 2009."

76.   Bank of America violated the following provisions with respect to the November 12, 2009, December 21, 2009 and January 29, 2010 letters:

1) Bank of America failed to promptly make appropriate corrections in plaintiffs' account;

2) Bank of America failed to transmit to plaintiffs a written notification of such correction;

3) Bank of America failed to conduct an investigation of the disputed credit reporting;

4) Bank of America failed to provide plaintiffs with a written explanation or clarification that included a statement as to why Bank of America had determined that plaintiffs' dispute was without merit.

5) Bank of America failed to cease reporting derogatory information regarding the disputed overdue payments during the sixty day period.

77.   Bank of America's many violations of RESPA constitute a "pattern and practice" of violation of the Act.  Pursuant to 12 U.S.C. §2605(f)(1), Bank of America is liable for $1,000.00.

78.   Plaintiffs were damaged by Bank of America's violations of RESPA.  Plaintiffs

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

suffered emotional damages due to the continued reporting of the derogatory credit information on their credit reports, and Bank of America's failure to communicate with plaintiffs in any meaningful way as to the reasons it was continuing to destroy their credit rating. Plaintiffs also suffered economic damages. Plaintiffs were unable to refinance some of their properties due to the derogatory credit information. Plaintiffs were also unable to consummate a sale of co-owned real property, which transaction required that they maintain excellent credit. The property was ultimately sold to another buyer at a lower price, but the delay in receipt of the funds forced the Stewarts to miss several payments on their real estate mortgages, thereby ruining their credit rating.

### **PRAYER FOR RELIEF**

THEREFORE, Plaintiffs pray that the Court grant the following relief:

**Against Bank of America:**

a) Actual damages, including emotional distress, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o, California Civil Code §1685.31(a), and 12 U.S.C. §2605(f)(1)(A);

b) Punitive damages pursuant to 15 U.S.C. §1681n(a)(2) and Civil Code §1785.31(a)(2)(B);

c) Additional damages of $1,000.00 pursuant to 12 U.S.C. §2605(f)(1)(B) in an amount not to exceed $1,000;

d) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n(c) California Civil Code 1785.31(a)(1), §1785.31(d) and 12 U.S.C. §2605(f)(3);

e) For such other and further relief as the Court deems just and proper.

**Against Equifax, Experian, and Trans Union:**

a) Actual damages, including emotional distress, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o.

b) Punitive damages pursuant to 15 U.S.C. §1681n(a)(2);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1681n(c) and Civil Code §1785.31(a)(1) and §1785.31(d).

e) For such other and further relief as the Court deems just and proper.

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND

Dated: June 16, 2011                    LAW OFFICE OF WILLIAM E. KENNEDY


                                        _____/s/_____
                                        William E. Kennedy
                                        Attorney for Plaintiffs WILLIAM G. STEWART
                                        AND NANCY STEWART

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury in this action.

Dated: June 16, 2011                    LAW OFFICE OF WILLIAM E. KENNEDY


                                        _____/s/_____
                                        William E. Kennedy
                                        Attorney for Plaintiffs WILLIAM G. STEWART
                                        AND NANCY STEWART

SECOND AMENDED COMPLAINT AND JURY TRIAL DEMAND